09 - MC - 0078

**ORIGINAL**
FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 30 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| **ECONOMIC RELIEF TECHNOLOGIES, LLC,** a Nevada limited liability company, | ) |
| **SAFERIDE WARRANTY LLC,** a Florida limited liability company, | ) |
| **VP MARKETING, LLC,** a Georgia limited liability company, | ) |
| **JASON JAMES EYER,** | ) |
| **KARA SINGLETON ADAMS, and** | ) |
| **JAMES A. SHOENHOLZ,** | ) |
| **Defendants.** | ) |

Case No. 1 09 - CV - 3347

[Proposed]

*Ex Parte*
Temporary Restraining Order
With Asset Freeze and
and Other Equitable Relief,
and Order to Show Cause
Why a Preliminary
Injunction Should Not Issue

**TCB**

CLERK'S OFFICE
Denver, Atlanta

NOV 3 0 2009

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC - 9 2009

GREGORY C. LANGHAM
                    **CLERK**

EXHIBIT B

Plaintiff, the Federal Trade Commission, having filed its Complaint for Permanent Injunction and Other Equitable Relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § § 6101-6108, and having moved for an *ex parte* temporary restraining order and other relief pursuant Rule 65 of the Federal Rules of Civil Procedure, and the Court, having considered the Complaint, declarations, exhibits, and memorandum of law filed in support thereof, and now being advised in the premises, finds that:

1.      This Court has jurisdiction over the subject matter of this case and there is good cause to believe that it will have jurisdiction over the parties.

2.      Venue lies properly with this Court.

3.      There is good cause to believe that Jason James Eyer, Kara Singleton Adams, James A. Schoenholz, and their companies Economic Relief Technologies, LLC, SafeRide Warranty LLC, and VP Marketing, LLC (collectively "Defendants"), have engaged in and are likely to engage in the future in, acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the

1

Telemarketing Sales Rule ("TSR), 16 C.F.R. Part 310, and that the Commission is therefore likely to prevail on the merits of this action.

4.      There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution will occur from the sale, transfer, or other disposition or concealment by Defendants of their assets or corporate records unless Defendants are immediately restrained and enjoined by order of this Court. Thus, there is good cause for an asset freeze, the appointment of a temporary receiver over corporate Defendants Economic Relief Technologies, LLC, SafeRide Warranty LLC, and VP Marketing, LLC, and for relieving Plaintiff of the duty to provide Defendants with prior notice of Plaintiff's motion.

5.      Weighing the equities and considering Plaintiff's likelihood of ultimate success, an *ex parte* temporary restraining order with asset freeze and other equitable relief is in the public interest.

6.      No security is required of any agency of the United States for issuance of a restraining order. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For purposes of this Temporary Restraining Order ("Order"), the following definitions shall apply:

1.  **"Asset"** or **"Assets"** means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes," (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.  **"Assisting others"** includes but is not limited to, providing any of the following services to any person or entity: (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any sales script, other marketing material, or marketing services of any kind; (3) providing names of, or assisting in the generation of, potential customers; (4) providing credit card merchant processing accounts, or otherwise providing access to a billing and collection system (such as a credit card, checking,

3

savings, share or similar account, utility bill, telephone bill, mortgage loan account or debit card), or causing any charges to be made to such an account or utilizing such a system; (6) acting as an officer or director of a business entity; or (7) providing telemarketing services of any kind.

3.      **"Billing information"** means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

4.      **"Individual Defendants"** means Jason James Eyer, Kara Singleton Adams, and James A. Schoenholz, and by whatever other names each may be known.

5.      **"Corporate Defendants"** means Economic Relief Technologies, LLC, SafeRide Warranty LLC, and VP Marketing, LLC, and their successors and assigns, as well as any subsidiaries, and any fictitious business entities or business names created or used by these entities, or any of them.

6.      **"Defendants"** means all of the individual Defendants and corporate Defendants, individually, collectively, or in any combination.

7.      **"Document"** or **"Documents"** means any materials listed in Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, audio

and video recordings, computer records, and other data or data compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form through detection devices. A draft or non-identical copy is a separate "document" within the meaning of this term.

8.   **"Financial institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

9.   **"Material"** means likely to affect a person's choice of, or conduct regarding, goods or services.

10.   **"National Do Not Call Registry"** means the National Do Not Call Registry, which is the "do-not-call" registry maintained by the Federal Trade Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

11.   **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

12.     **"Plaintiff"** mean the Federal Trade Commission ("Commission" or "FTC").

13.     **"Telemarketer"** means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(bb).

14.     **"Telemarketing"** means a plan, program, or campaign (whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310) which is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

## I. PROHIBITED BUSINESS ACTIVITIES

**IT IS HEREBY ORDERED** that Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, in connection with the telemarketing, advertising, marketing,

6

promoting, offering for sale, or sale of any good or service, are hereby restrained and enjoined from:

A.   Misrepresenting, or assisting others in misrepresenting ,directly or indirectly, expressly or by implication, that:

1.   Defendants will substantially lower consumers' credit card interest rates in all or virtually all instances;

2.   Defendants will save consumers thousands of dollars in all or virtually all instances as a result of lowered credit card interest rates;

3.   Defendants will enable consumers to pay off their debts much faster, typically three to five times faster, in all or virtually all instances, as a result of lowered credit card interest rates;

4.   Defendants will provide full refunds if consumers do not save thousands of dollars as a result of lowered credit card interest rates;

5.   Defendants are calling from, or affiliated with, the manufacturer or dealer of a consumer's automobile;

6.   A consumer's automobile warranty is about to expire.

B.   Violating, or assisting others in violating, any provision of the TSR, including, but not limited to:

1.     Section 310.3(a)(2)(iii) of the TSR, 16 C.F.R. § 310.3(a)(2)(iii), by misrepresenting, expressly or by implication, that:

    a.     Defendants will substantially lower consumers' credit card interest rates in all or virtually all instances;

    b.     Defendants will save consumers thousands of dollars in all or virtually all instances as a result of lowered credit card interest rates; and

    c.     Defendants will enable consumers to pay off their debts much faster, typically three to five times faster, in all or virtually all instances, as a result of lowered credit card interest rates;

2.     Section 310.3(a)(2)(iv) of the TSR, 16 C.F.R. § 310.3(a)(2)(iv), by misrepresenting, expressly or by implication, that Defendants will provide full refunds if consumers do not save thousands of dollars as a result of lowered credit card interest rates;

3.     Section 310.3(a)(2)(iii), 310.3(a)(2)(vii), and 310.3(a)(4) of the TSR, §§ 310.3(a)(2)(iv) of the TSR, 16 C.F.R. § 310.3(a)(2)(iv), by misrepresenting, expressly or by implication, that:

a.      Defendants are calling from, or affiliated with, the

manufacturer or dealer of a consumer's automobile; and

b.      A consumer's automobile warranty is about to expire.

4.      Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R.

§ 310.4(b)(1)(iii)(B), by engaging, or causing others to engage, in

initiating an outbound telephone call to a person's telephone number

on the National Do Not Call Registry;

5.      Section 310.4(b)(1)(iii)(A) of the TSR, 16 C.F.R. §

310.4(b)(1)(iii)(A), by initiating, or causing others to initiate, an

outbound telephone call to a person who previously has stated that he

or she does not wish to receive an outbound telephone call made by or

on behalf of the seller whose goods or services are being offered;

6.      Section 310.4(b)(1)(iv) of the TSR, 16 C.F.R. § 310.4(b)(1)(iv),

by abandoning, or causing others to abandon, an outbound telephone

call by failing to connect the call to a sales representative within two

(2) seconds of the completed greeting of the person answering the

call;

7.     Section 310.4(a)(7) of the TSR, 16 C.F.R. § 310.4(a)(7), by
failing to transmit or cause to be transmitted the telephone number
and name of the telemarketer or seller to any caller identification
service in use by a recipient of a telemarketing call;

8.     Section 310.8 of the TSR, 16 C.F.R. § 310.8, by initiating, or
causing others to initiate, outbound telephone calls to a telephone
number within a given area code on behalf of a seller who has not,
either directly or through another person, paid the required annual fee
for access to the telephone numbers within that area code that are
included in The National Do Not Call Registry;

9.     Section 310.4(d) of the TSR, 16 C.F.R. § 310.4(d), by failing to
disclose truthfully, promptly and in a clear and conspicuous manner to
a person receiving a call:

    a.     the identity of the seller,

    b.     that the purpose of the call is to sell goods or services, or

    c.     the nature of the goods or services; and

10.    Section 310.4(b)(1)(v)(B)(ii) of the TSR, § 16 C.F.R.

310.(b)(1)(v)(B)(ii), by initiating, or causing others to initiate,

outbound telephone calls delivering prerecorded messages that do not

promptly provide the disclosures required by Section 310.4(d) of the

TSR.

## II. ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents,

directors, servants, employees, salespersons, independent contractors, members,

partners, corporations, subsidiaries, affiliates, successors and assigns, and all other

persons or entities in active concert or participation with them who receive actual

notice of this Order by personal service or otherwise, whether acting directly or

through any trust, corporation, subsidiary, division or other device, or any of them,

are hereby restrained and enjoined from:

A.      Transferring, liquidating, converting, encumbering, pledging,

loaning, selling, concealing, dissipating, disbursing, assigning, spending,

withdrawing, granting a lien or security interest or other interest in, or otherwise

disposing of any funds, real or personal property, automobiles, accounts, contracts,

consumer lists, coins, precious metals, artwork, shares of stock, uncashed checks,

or other Assets, or any interest therein, wherever located, including any Assets outside the territorial United States, that are:

     1.     owned, controlled or held by, or for the benefit of, in whole or in part, any Defendant;

     2.     in the actual or constructive possession of any Defendant, including, but not limited to any Assets held for or by any defendant in any account at any bank or savings and loan institution, or any credit card processing agent or agent providing electronic fund transfer services or automated clearing house processing, network transaction processor, bank debit processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind, either within or outside the territorial United States;

     3.     held by an agent of any Defendant as a retainer for the agent's provision of services to any Defendant; or

     4.     owned, controlled by, or in the actual or constructive possession

of, or otherwise held for the benefit of, any corporation, partnership or other

entity directly or indirectly owned, managed or controlled by any Defendant,

including, but not limited to: Paradise Enterprises, Ltd.; JAKK Group

Development, LLC; JAKK Group, LLC; Debt Suite, Inc.; J2 Consulting

LLC; Network Connections, LLC; Lift Enterprises, LLC; Extended

Warranties Services, LLC;  Personal Data Systems, Inc.; Debt Freedom,

LLC; DM Associates, LLC; Precision Business Solutions, LLC; Reliable

Resources; Ride Assured, LLC; UV Services, Inc.; DI Enterprises, Inc.;

Debt Systems, LLC; Clear Financial Solutions; Americare Software

Solutions, Inc.; Assured Warranties, LLC; Debtworks Software, LLC; 1st

Metropolitan Atlanta Realty, LLC; Unlimited Ventures, L.L.C.; Total Curb

Appeal, LLC; Moneyworks, LLC; Intellidebt Inc.; Debt Centric Inc.; and

Two J Consulting.

B.    Opening or causing to be opened any safe deposit boxes, commercial

mail boxes, or storage facilities titled in the name of, or for the use or benefit of,

any Defendant, or subject to access by any Defendant, or under the control of any

Defendant;

13

C.      Incurring charges or cash advances on any credit card, debit card, or lines of credit issued in the name, individually or jointly, of any Defendant;

D.      Obtaining a personal or secured loan;

E.      Cashing any checks or depositing any payments from customers or clients of Defendants; or

F.      Incurring liens or other encumbrances on real property, personal property, or other Asset titled in the name, individually or jointly, of any Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant.

The Assets affected by this Section shall include both existing Assets and Assets acquired after the effective date of this Order.

## III. DUTIES OF THIRD PARTY ASSET HOLDERS

**IT IS FURTHER ORDERED** that each financial institution, business entity, or person maintaining or having custody or control of any account or other Asset of any Defendant, or that at any time since January 1, 2007, has maintained or had custody of any such Asset, and which is provided with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

14

A.     Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any of the Assets, funds, documents, or other property held by or under its control, on behalf of any Defendant, or for the benefit or use of any Defendant, in whole or in part, except as directed by further order of this Court, or by written agreement of Plaintiff;

B.     Deny Defendants access to any safe deposit boxes, commercial mail boxes or storage facilities that are titled in the name, individually or jointly, of any Defendant, or otherwise subject to access by any Defendant;

C.     Provide to counsel for the Plaintiff, within five (5) business days of notice of this Order, a sworn statement setting forth:

1.     The identification of each account or Asset titled in the name, individually or jointly, of any Defendant, or to which any Defendant is a signatory, or which is held on behalf of, or for the benefit or use of, any Defendant, or subject to any Defendant's control, including all trust accounts on behalf of any Defendant or subject to any Defendant's control;

2.     The balance of each such account, or a description and appraisal

15

of the value of each such Asset, as of the close of business on the day on which notice of this Order is received, and, if the account or Asset has been closed or removed, or more than $1,000 withdrawn or transferred from it within the last one hundred and twenty (120) days, the date of the closure or removal of funds, the total funds removed or transferred, and the name and account number of the person or entity to whom such account, funds, or other Asset was remitted; and

     3.    The identification and location of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access or control by any Defendant.  If the account, safe deposit box, storage facility, or other Asset has been closed or removed within the last one hundred and twenty (120) days, the date closed or removed and the balance on said date;

D.    Within five (5) days of a request by Plaintiff, provide Plaintiff with copies of any records or other Documents pertaining to each such account or Asset, including, but not limited to, originals or copies of account applications, corporate resolutions, account statements, signature cards, checks, drafts, deposit tickets,

transfers to and from the accounts, all other debit and credit instruments or slips,

currency transaction reports, 1099 forms, and safe deposit box logs;

    E.    Plaintiff may properly serve this Order on any financial or brokerage

institution, business entity or person that holds, controls or maintains custody of

any account or Asset of any Defendant or has held, controlled or maintained

custody of any account or Asset of any Defendant at any time since January 1,

2007, by facsimile transmission, hand delivery, or overnight carrier. The Assets

affected by this Section shall include both existing Assets and Assets acquired after

the effective date of this Order.

## IV. FINANCIAL STATEMENTS AND INFORMATION

    **IT IS FURTHER ORDERED** that each Defendant shall serve upon

counsel for Plaintiff, within five (5) days of service of this Order:

    A.    A completed financial statement, accurate as of the date of entry of

this Order, for each individual Defendant in the form provided as Attachment A,

"Financial Statement of Individual Defendant," and for each corporate Defendant,

in the form provided as Attachment B, "Financial Statement of Corporate

Defendant." The financial statements shall include all Assets held outside the

territory of the United States, shall be accurate as of the date of entry of this Order,

and shall be verified under oath. Defendants shall attach to these completed

financial statements copies of all local, state, provincial, and federal income and

property tax returns, along with other attachments and schedules as called for by

the instructions to the financial statements; and

B.     The name, address and telephone number of each accountant,

financial planner, investment advisor, stock broker or other individual, corporation,

or partnership whom they have used for financial, business or tax advice or

services, since January 1, 2007.

## V. PROHIBITION ON DISCLOSING CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents,

directors, servants, employees, salespersons, independent contractors, attorneys,

members, partners, corporations, subsidiaries, affiliates, successors and assigns,

and all other persons or entities in active concert or participation with them who

receive actual notice of this Order by personal service or otherwise, whether acting

directly or through any trust, corporation, subsidiary, division or other device, or

any of them, are hereby restrained and enjoined from:

A.     Selling, renting, leasing, transferring, or otherwise disclosing the

name, address, birth date, telephone number, email address, Social Security

number, credit card number, bank account number, or other financial or identifying

personal information of any person from whom or about whom any Defendant

obtained such information in connection with activities alleged in the Complaint;

B.     Benefitting from or using the name, address, birth date, telephone

number, email address, Social Security number, credit card number, bank account

number, or other financial or identifying personal information of any person from

whom or about whom any Defendant obtained such information in connection with

activities alleged in the Complaint.

*Provided however*, that Defendants may disclose such financial or

identifying personal information to a law enforcement agency or as required by any

law, regulation, or court order.

## VI. MAINTAIN RECORDS AND REPORT NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents,

directors, servants, employees, salespersons, independent contractors, attorneys,

members, partners, corporations, subsidiaries, affiliates, successors and assigns,

and all other persons or entities in active concert or participation with them who

receive actual notice of this Order by personal service or otherwise, whether acting

directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained and enjoined from:

A.    Failing to create and maintain books, records, accounts, bank statements, accountants' reports, general ledgers, general journals, cash receipt ledgers, cash disbursement ledgers and source documents, documents indicating title to real or personal property, and any other data which, in reasonable detail, accurately, fairly, and completely reflect the incomes, disbursements, transactions, dispositions, and uses of the Defendants' Assets;

B.    Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents, including electronically stored information, that relate in any way to the business practices or business or personal finances of Defendants; to the business practices or finances of entities directly or indirectly under the control of Defendants; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

C.    Creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first

providing Plaintiff with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## VII. APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that _Pat Huddleston II_ is appointed as a temporary receiver ("Receiver") for Defendants Economic Relief Technologies, LLC, SafeRide Warranty LLC, and VP Marketing, LLC, and any of their affiliates, subsidiaries, divisions, or telephone sales operations, wherever located ("Receivership Defendants"), with the full power of an equity receiver. The Receiver is directed and authorized to accomplish the following:

A.    Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants.  The Receiver shall, however, not interfere with or be privy to the defense of this action;

B.    Take custody, control, and possession of all Assets and Documents of,

21

or in the possession, custody or under the control of, the Receivership Defendants wherever situated and including, but not limited to, the business premises of the Receivership Defendants. The Receiver shall have full power to divert mail and to sue for, collect, receive, take possession, hold and manage all Assets and Documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants. *Provided, however*, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter, without prior Court approval;

C.   Use any means necessary to take possession of and to secure each and every business premises of the Receivership Defendants. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all receivership Assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, Social Security number, job description, passwords or access codes, method of compensation, and all accrued and unpaid commissions and

compensation of each such employee or agent; (4) photographing and video taping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems, servers, network access, or other means of access to the computer or other records maintained at that location; and (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Defendants. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security;

D.    Conserve, hold, and manage all Assets of the Receivership Defendants and perform all acts necessary or advisable to preserve the value of those Assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing unauthorized transfer, withdrawal, or misapplication of Assets, and including the authority to liquidate or close out any open securities or commodities futures positions of the Receivership Defendants;

E.     Enter into contracts and purchase insurance as advisable or necessary;

F.     Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

G.     Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary;

H.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

I.     Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws;

J.     Institute, compromise, adjust, appear in, intervene in, or become party

24

to such actions or proceedings in state, federal, or foreign courts that the Receiver

deems necessary and advisable to preserve or recover the Assets of the

Receivership Defendants or that the Receiver deems necessary and advisable to

carry out the Receiver's mandate under this Order;

K.    Defend, compromise, adjust, or otherwise dispose of any or all actions

or proceedings instituted in the past or in the future against the Receiver in his role

as Receiver, or against the Receivership Defendants, as the Receiver deems

necessary and advisable to preserve the Assets of the Receivership Defendants, or

as the Receiver deems necessary and advisable to carry out the Receiver's mandate

under this Order;

L.    Continue to conduct the business of the Receivership Defendants in

such manner, to such extent, and for such duration as the Receiver may in good

faith deem to be necessary or appropriate to operate the businesses profitably and

lawfully, if at all; provided that the continuation and conduct of the business shall

be conditioned upon the Receiver's good faith determination that the business can

be lawfully operated at a profit using the Assets of the receivership estate;

M.    Issue subpoenae to obtain Documents and records pertaining to the

25

receivership, and conduct discovery in this action on behalf of the receivership

estate;

N.     Open one or more bank accounts as designated depositories for funds

of the Receivership Defendants.  The Receiver shall deposit all funds of the

Receivership Defendants in such a designated account and shall make all payments

and disbursements from the receivership estate from such an account.  The

Receiver shall serve copies of monthly account statements on all parties;

O.     Maintain accurate records of all receipts and expenditures made as

Receiver;

P.     Cooperate with reasonable requests for information or assistance from

any state or federal law enforcement agency, including Plaintiff; and

Q.     File reports with the Court on a timely basis.

### VIII.  COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that

A.     Defendants, and their officers, agents, directors, servants, employees,

salespersons, independent contractors, attorneys, members, partners, corporations,

subsidiaries, affiliates, successors and assigns, and all other persons or entities in

active concert or participation with them who receive actual notice of this Order by

personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, and all other persons or entities served with a copy of this Order, shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but not be limited to:

> 1.      Providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; and
>
> 2.      Providing any password required to access any computer, electronic file, or telephonic data in any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.

B.      Defendants and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, and all other

persons or entities served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

1.    Transacting any of the business of the Receivership Defendants;

2.    Destroying, secreting, defacing, mutilating, concealing, altering, transferring, or otherwise disposing of any Document of the Receivership Defendants, including but not limited to books, records, tapes, discs, accounting data, checks (fronts and backs), correspondence, forms, advertisements, website designs and texts, telemarketing scripts or outlines, brochures, manuals, banking records, customer lists, customer files, customer payment histories, invoices, telephone records, ledgers, payroll records, or other Documents of any kind, including electronically stored information;

3.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Asset owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, any Receivership Defendant, or the Receiver;

4.    Excusing debts owed to the Receivership Defendants;

28

5.      Failing to notify the Receiver of any Asset, including accounts, of the Receivership Defendants held in any name other than the name of the Receivership Defendants, or by any person or entity other than the Receivership Defendants, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Assets;

6.      Doing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the Assets or Documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court; or

7.      Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.,* without prior permission from this Court.

29

## IX. COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is entitled to reasonable compensation for the performance of all duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred, solely from the Assets now held by, or in the possession or control of, or which may be received by the Receivership Defendants. The Receiver shall file with the Court, and serve on the parties, periodic requests for the payment of such compensation, with the first such request due prior to sixty days after the date of this Order. The Receiver shall not increase the Receiver's fee billed to the receivership estate without prior approval of the Court.

## X. BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $ _____0_____ with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts as the Court directs.

## XI. IMMEDIATE ACCESS TO BUSINESS OFFICES AND RECORDS

**IT IS FURTHER ORDERED** that the Receiver, Plaintiff, and their representatives, agents, and assistants shall have immediate access to all business

locations where the Receivership Defendant's business-related property, records, or equipment are located. The Receiver and his representatives, agents, and assistants, shall also have the right to remove Documents from any other business locations connected with the Receivership Defendants' business in order that they may be inspected, inventoried, and copied.

## XII. DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that, immediately upon service of this Order upon them, or within such time as may be permitted by the Receiver, Defendants, or any other person or entity served with a copy of this Order, shall transfer or deliver possession, custody and control of the following to the Receiver:

A.    All Assets of the Receivership Defendants (including, but not limited to, desktop and laptop computers and network servers);

B.    All Documents of the Receivership Defendants, including, but not limited to, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), customer lists, title documents, contracts, accounting data, written or electronic correspondence, advertisements, computer tapes, disks, or other computerized records, books, written or printed records,

handwritten notes, telephone logs, telephone scripts, membership records and lists,

refund records, receipts, ledgers, personal and business canceled checks and check

registers, appointment books, copies of federal, state, or local business, personal

income, or property tax returns, and other Documents or records of any kind that

relate to the Receivership Defendants' business practices;

C.     All funds and other Assets belonging to members of the public now

held by the Receivership Defendants;  and

D.     All keys, codes, and passwords, entry codes, combinations to locks,

and information or devices required to open or gain access to any Asset or

Document, including, but not limited to, access to their business premises, means

of communication, accounts, computer systems, or other property.

## XIII.  NON-COMPLIANCE WITH TRANSFERS OR DELIVERY

**IT IS FURTHER ORDERED** that, in the event any person or entity fails to

transfer or deliver any Asset or otherwise fails to comply with any provision of this

Order requiring the delivery of Assets, Documents or other things, the Receiver

may file *ex parte* an affidavit of non-compliance regarding the failure.  Upon filing

of the affidavit, the Court may authorize, without additional process or demand,

writs of possession or sequestration or other equitable writs requested by the

Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the Asset, Document, or other thing and to deliver it to the Receiver.

## XIV.   REPATRIATION OF FOREIGN ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that, within five (5) business days following service of this Order, Defendants shall:

A.      Repatriate to the United States all funds, Documents or Assets in foreign countries held either: (1) by any Defendant; (2) for the benefit of any Defendant; or (3) under the direct or indirect control, jointly or individually, of any Defendant;

B.      The same business day as any repatriation, (1) notify counsel for the Plaintiff and the Receiver of the name and location of the financial institution or other entity that is the recipient of such funds, Documents or Assets; and (2) serve this Order on any such financial institution or other entity;

C.      Provide the Plaintiff and the Receiver with a full accounting of all funds, Documents, and Assets outside of the territory of the United States held

either: (1) by the Defendants; (2) for the Defendants's benefit; or (3) under the

Defendants' direct or indirect control, individually or jointly;

D.    Provide Plaintiff with access to all records of accounts or assets of

Defendants held by financial institutions whether located outside the territorial

United States or otherwise by signing the Consent to Release of Financial Records

attached to this Order as Attachment C.

## XV.  INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants are hereby temporarily

restrained and enjoined from taking any action, directly or indirectly, which may

result in the encumbrance or dissipation of foreign Assets, or in the hindrance of

the repatriation required by the preceding Section of this Order, including, but not

limited to:

A.    Sending any statement, letter, fax, e-mail or wire transmission, or

telephoning or engaging in any other act, directly or indirectly, that results in a

determination by a foreign trustee or other entity that a "duress" event has occurred

under the terms of a foreign trust agreement, until such time as all Assets have

been fully repatriated pursuant to the preceding Section of this Order; and

B.      Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time as all Assets have been fully repatriated pursuant to the preceding Section of this Order.

## XVI.  EXPEDITED DISCOVER OF ASSETS AND BUSINESS OPERATIONS

**IT IS FURTHER ORDERED** that pursuant to Federal Rules of Civil Procedure 30(a), 31(a), 34, and 45, and notwithstanding the provisions of Federal Rules of Civil Procedure 26(d) and (f), 30(a)(2)(A)-(C), and 31(a)(2)(A)-(C), Plaintiff is granted leave, at any time after entry of this Order to:

A.      Take the deposition of any person or entity, whether or not a party, for the purpose of discovering the nature, location, status, and extent of Defendants' Assets; the location of any premises where Defendants, directly or through any third party, conduct business operations; and/or the Defendants' whereabouts; and

B.      Demand the production of documents from any person or entity, whether or not a party, relating to the nature, status, and extent of Defendants' Assets; the location of any premises where Defendants, directly or through any third party, conduct business operations; and the Defendants' whereabouts.

C.    Three (3) days notice shall be deemed sufficient for any such deposition, five (5) days notice shall be deemed sufficient for the production of any such documents, and twenty-four (24) hours notice shall be deemed sufficient for the production of any such documents that are maintained or stored only as electronic data.  The provisions of this Section shall apply both to parties to this case and to non-parties.  The limitations and conditions set forth in Federal Rules of Civil Procedure 30(a)(2)(B) and 31(a)(2)(B) regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section.  Any such depositions taken pursuant to this Section shall not be counted toward any limit on the number of depositions under the Federal Rules of Civil Procedure or the Local Rules of Civil Procedure for the United States District Court for the Northern District of Georgia, including those set forth in Federal Rules of Civil Procedure 30(a)(2)(A) and 31(a)(2)(A).  Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made through the means described in Section XV of this Order.

## XVII.  CREDIT REPORTS

**IT IS FURTHER ORDERED** that the Plaintiff may obtain credit reports concerning the individual Defendants, Jason James Eyer, Kara Singleton Adams

and James A. Schoenholz, pursuant to Section 604(a)(1) of the Fair Credit

Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit

reporting agency from which such report is requested shall provide it to the

Plaintiff.

## XVIII.  DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a

copy of this Order to each affiliate, agent, partner, division, sales entity, successor,

assignee, officer, director, employee, independent contractor, spouse, Internet web

host or master, agent, attorney, and/or representative of Defendants and shall,

within ten (10) days from the date of entry of this Order, serve upon counsel for the

Plaintiff a sworn statement that the Defendants have complied with this provision

of this Order, which statement shall include the names and addresses of each such

person or entity who has received a copy of the Order.

## XIX.  STAY OF ACTIONS

**IT IS FURTHER ORDERED** that;

Except by leave of this Court, during the pendency of the receivership

ordered herein, the Defendants and all other persons and entities are hereby stayed

from taking any action to establish or enforce any claim, right or interest for,

against, on behalf of, in, or in the name of, the Receivership Defendants, or any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

A.    Commencing, prosecuting, continuing or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

B.    Accelerating the due date of any obligation or claimed obligation, filing, perfecting, or enforcing any lien; taking or attempting to take possession, custody or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise, or setoff of any debt owing to the Receivership Defendants that arose before the date of this Order against any claim against the Receivership Defendants;

C.    Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession or management of the Assets or Documents subject to this receivership, or to harass or interfere with the Receiver in any way,

or to interfere in any manner with the exclusive jurisdiction of this Court over the

Assets and Documents of the Receivership Defendants.

*Provided, however*, nothing in this Paragraph shall prohibit any federal or

state law enforcement or regulatory authority from commencing or prosecuting an

action against the Receivership Defendants.

*Provided further*, that, except as otherwise provided in this Order, all

persons and entities in need of documentation from the Receiver shall in all

instances first attempt to secure such information by submitting a formal written

request to the Receiver, and, if such request has not been responded to within thirty

(30) days of receipt by the Receiver, any such person or entity may thereafter seek

an order of this Court with regard to the relief requested.

## XX.   ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED,** pursuant to Federal Rule of Civil Procedure

65(b), that each Defendant shall appear before this Court on the 14th day of

December , 2009, at 2 o'clock p .m., at the United States

Courthouse, United States District Court for the Northern District of Georgia,

Atlanta, Georgia, Courtroom 1708, to show cause, if there is any, why this Court

should not enter a preliminary injunction, pending final ruling on the Complaint

against Defendants, enjoining them from further violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and the Telemarketing Sales Rule, 16 C.F.R. Part 310, continuing the freeze of their Assets, making the Receiver's appointment permanent, and imposing such additional relief as may be appropriate. Defendants shall file and serve answering pleadings or materials on Counsel for the Plaintiff not less than _3_ business days prior to the hearing on Plaintiff's request for a preliminary injunction. Plaintiff may submit reply pleadings or materials not less than _1_ days prior to the hearing.

## XXI. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be distributed by U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally by agent or employees of Plaintiff, by agents or employees of the Receiver, by any law enforcement agency, or by private process server, upon any person, financial institution, or other entity that may have possession or control of any property, property right, Asset or Document of any Defendant, or that may be subject to any provision of this Order. Service upon any branch or office of any financial institution or entity shall effect service upon the entire financial institution or entity.

## XXII.  CORRESPONDENCE WITH AND NOTICE TO PLAINTIFF

**IT IS FURTHER ORDERED** that, for purposes of this Order, all correspondence and pleadings to the Commission shall be addressed to:

> Valerie M. Verduce, Esq.
> Federal Trade Commission
> 225 Peachtree Street, Suite 1500
> Atlanta, Georgia 30303
> (404) 656-1355 (telephone)
> (404) 656-1379 (facsimile)

Notice may be provided by email to vverduce@ftc.gov.

## XXIII.  DURATION OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein shall expire at __4__ p.m., on _December 14_ , 2009, unless, for good cause shown, this Order is extended or unless the Defendants consent that it should be extended for a longer period of time.

41

## XXIV. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction over this matter for all purposes.

**IT IS SO ORDERED,** this 30th day of November , 2009, at 11:30 a.m.

_____

United States District Judge

42